# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOUGLAS E. RETTER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12cv792 |
| | ) | **Electronic Filing** |
| **GREGORY K. DOUGLAS,** Esquire, | ) | |
| **TERRY J. MITKO,** Esquire, **THE** | ) | |
| **COUNTY OF BEAVER, BEAVER** | ) | |
| **COUNTY CIVIL AND CRIMINAL** | ) | |
| **COURTS DIVISIONS, BEAVER** | ) | |
| **COUNTY, PENNSYLVANIA,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

Plaintiff commenced this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985(2) & (3) seeking redress for the alleged violation of his due process and equal protection rights secured by the Fourteenth and Fifth Amendments. Complaint (Doc. No. 3) at ¶¶ 5-8. His claims also are brought pursuant to Title 18 of the Pennsylvania Criminal Code. <u>Id.</u> He contends that his rights were violated pursuant to conspiratorial conduct undertaken by defendants in conjunction with Protection From Abuse and divorce proceedings involving plaintiff's ex-wife. <u>Id.</u> at ¶¶ 12-18. Defendants move to dismiss on a variety of grounds.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." <u>Rocks v. City of Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is

proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery.  Id. at 544.  In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability.  Id.  Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct.  Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8  (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,'

'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins, 293 F.3d at 688 (quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook procedural shortcomings in pleadings submitted by those who choose to represent themselves. McNeil, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil

litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal Rule of Civil Procedure 8(a). And, while Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claims showing that the pleader is entitled to relief," Rule 12(b)(6) is not without meaning. Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002). It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Id. at 142 - 43 (quoting Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 318 (2d ed. 1990)). This principle appears to be even more well-grounded after Twombly.

A summary of plaintiff's complaint follows. Defendants allegedly conspired willfully and purposefully to violate plaintiff's rights to due process and equal protection by depriving him of a multitude of fair and equitable hearings. Complaint at ¶ 12. During the course of the conspiracy they employed tactics that violated attorney and court ethics, engaged in misrepresentation, supplied misinformation, committed malpractice and fraud, and disregarded rules of law and court to the point of violating criminal statutes. Id. at 15. This course of conduct continued throughout plaintiff's presentation of over 60 motions and petitions and was implemented purposefully to: (1) inflict pain, suffering and mental anguish, severe hardship, and humiliation; (2) deprive plaintiff of personal property and (3) cause destruction of personal property, financial loss and loss of livelihood. Id. at 16.

Plaintiff initially hired defendant Attorney Douglas to represent him in a PFA hearing and an anticipated divorce proceeding. Defendant Attorney Mitko represented plaintiff's soon-to-be ex-wife. Id. at ¶¶ 18, 24.

Attorney Douglas "willfully mishandled plaintiff's case." Id. at ¶ 19. At the PFA hearing Attorney Douglas purportedly arrived unprepared, discarded all critical evidence that could refute the charges against plaintiff and then did not communicate with plaintiff during the course of the proceeding. He did not present a summation and then informed plaintiff that no appeal was possible and he did not have a claim to personal property within the marital home. Id. at ¶¶ 18-19. Although Attorney Douglas did negotiate several hours of access to plaintiff's shop and business, the failure to pursue access to the home permitted Attorney Mitko "to deny plaintiff reasonable access to plaintiff's personal property." Id. at ¶ 20.

Attorney Douglas dissuaded plaintiff from pursuing an "at-fault" divorce but permitted Attorney Mitko to proceed with one without clearly stated grounds. Id. at ¶ 21. He then lied and coerced plaintiff into signing a devastatingly harmful consent decree. Id. at ¶22. Plaintiff was duped into giving up entitlement to $1017 in alimony pendent lite in return for a mere $500 a month. Attorney Douglas then purported to work on plaintiff's case for 3 months but in actuality did nothing. Id. at ¶ 22.

After experiencing months of lies and inaction, plaintiff went to Attorney Douglas' office and remarked to his secretary that his irresponsible behavior seemed to constitute professional misconduct. Attorney Douglas then moved to withdraw from the representation and Judge Knafelc granted the motion. This action precluded plaintiff from securing other representation and he was forced to self-represent. Id. at ¶ 23.

When plaintiff received his case file from Attorney Douglas, plaintiff discovered unauthorized agreements between Attorney Douglas and Attorney Mitko that were forged pursuant to telephone conversations and confirmed by mail. These agreements were made without plaintiff's knowledge and even before plaintiff was aware of the PFA charges against

him.  Id. at ¶ 24.  These agreements reflected a conspiracy wherein Attorney Douglas defrauded and betrayed plaintiff and worked exclusively for the benefit of plaintiff's ex-wife.  Id. at ¶ 25. This collusion prevented plaintiff from receiving fair and equitable hearings in violation of his Fifth and Fourteenth Amendment rights and resulted in plaintiff losing his home, business, property, personal belongings, livelihood, and thousands of dollars.  Id.

Plaintiff attempted to present a "Motion for a New Hearing Based on New Evidence" in the Beaver County Court of Common Pleas.  The new evidence was Attorney Douglas' professional misconduct and conspiracy with Attorney Mitko.  Id. at ¶ 26.  The motion was assigned to Judge Kim Telsa, who had presided in plaintiff's PFA proceeding.  Id. at ¶ 27. Attorney Mitko's associate was permitted to respond to plaintiff's motion at the hearing on that motion over plaintiff's objection that Attorney Mitko lacked standing to be heard on Attorney Douglas' misconduct.  Id.

Judge Telsa repeatedly characterized plaintiff's motion as an "appeal" of his PFA proceeding and ultimately denied the motion on the ground that it was an untimely appeal. Plaintiff sought reconsideration and clarification, but these motions were denied as well.  Id. at ¶¶ 28-29.  These rulings were contrary to what the merits dictated, resulting in a willful and purposeful violation of plaintiff's rights to due process and equal protection.  Id. at ¶ 30.

Plaintiff attempted to appeal the denial of his motion for a new hearing, but the prothonotary refused to accept the filing without the payment of fees.  The County Solicitor failed to justify the refusal.  Plaintiff then served notice of his appeal and presented an IFP petition before Judge Kwidis.  Attorney Mitko appeared at what should have been a routine means hearing, again complaining that plaintiff was attempting to submit some expired appeals. Judge Kwidis refused to rule on plaintiff's submission, returning it to him without action.  The

court thereafter ignored two letters written by plaintiff asking for a ruling on the petition. Attorney Mitko somehow subsequently gained possession of one of these letters and presented it to Judge Knafelc in the divorce proceeding, even though the letter was addressed only to Judge Kwidis. Id. at ¶¶ 31-36.

Plaintiff was required to go to the Superior Court to get the trial court to proceed on his IFP petition for appeal. The Court of Common Pleas of Beaver County then scheduled a means hearing six weeks after plaintiff first sought to appeal. This course of obstruction to deny plaintiff from appealing to the Superior Court violated plaintiff's rights to due process and equal protection. Id. at ¶ 37. An order seeking to justify the delay was entered. The order was based on false information that was not in the record. Id. at ¶¶ 38-39. A second order was entered claiming plaintiff had filed a motion to strike his IFP petition; plaintiff had not filed such a motion. Id. at ¶ 40. These fabricated court documents constituted violations of Pennsylvania's criminal law and the criminal creation of the forged orders evidenced a structured conspiracy to violate plaintiff's Fifth and Fourteenth Amendment rights. Id. at ¶ 41. Judge Telsa was unable to explain the falsified orders at the means hearing, and when Judge Tesla refused to acknowledge or investigate the forged court orders the court became complicit in the crimes. Id. at ¶ 42.

Plaintiff attempted to file criminal charges against Judge Tesla. Id. at ¶ 43. Detectives and assistant attorneys of the Beaver County District Attorney's office claimed that nothing could be done due to a conflict of interest or the lack of jurisdiction. Plaintiff was directed to the Judicial Conduct Board, which was a complete falsehood. The County Commissioners likewise claimed a lack of authority to act and plaintiff's presentation of formal written charges repeatedly were ignored by the Beaver Police. Id.

Plaintiff appeared pro se in the divorce proceeding.  Judge Knafelc warned plaintiff that he would not receive special treatment and then lectured plaintiff about details of the case that the Judge should not have known.  Ex parte conversations between Attorney Mitko and Judge Knafelc became routine.  Plaintiff was always respectful and courteous with the court but was treated with total hostility, rudeness and unprovoked abuse.  Attorney Mitko was invited to file improper motions, which she did and which were granted.  Id. at ¶¶ 44-45.  The court lectured plaintiff and told him he broke the rules by proceeding pro se and persistently tried to punish him for doing so, further violating his due process and equal protection rights.  Id. at ¶ 46.

Plaintiff discovered that his spouse had placed his belongings such as expensive furniture, electronics and perishables outside the marital home, where they could be stolen or destroyed by the weather.  Plaintiff filed a petition for special relief asking for access and sanctions and a motion for sanctions, followed by a petition to compel the production of critical financial documents.  Judge Knafelc "promised" a hearing on all these matters, but refused to schedule it for eight months.  The failure to schedule a prompt hearing with the knowledge that plaintiff's property was being intentionally destroyed and the refusal to compel the documents constituted a further violation of plaintiff's rights to due process and equal protection.  Id. at ¶ 48.

Throughout both proceedings plaintiff was subjected to unprovoked belligerence, hostility, and extreme injustice.  He submitted over 60 motions, all of which were routinely denied or ignored.  He was treated with disrespect and contempt, mocked and ridiculed and subjected to arbitrary rulings.  Attorney Mitko refused to negotiate and forced needless litigation and yet was shown favoritism from the bench on every occasion and at every turn.  She was awarded $3100 in attorney fees pursuant to a motion that was invited by Judge Knafelc.  Id. at ¶¶ 49-53.

Plaintiff maintains that Attorney Douglas' partnership with Attorney Mitko caused him to be wrongfully convicted in the PFA, evicted from his home and business, his belongings stolen, maliciously destroyed or confiscated, all while the courts actively supervised. He lost a great deal of personal property, some of it with sentimental value, as well as his home, shop, tools, inventory and livelihood. In addition, plaintiff experienced extreme hardship, mental anguish, physical and psychological distress, humiliation, shame and suffering, all contributing to his poor health. Id. at ¶¶ 54-55.

Based on the above, plaintiff seeks relief pursuant to § 1983 and §§ 1985(2) & (3) in the form of 1) an order vacating his PFA conviction, 2) an order overturning his divorce, 3) at least $335,000 in compensatory damages, and 4) $5,000,000 in punitive damages. Id. at Addendum Clause.

The individual defendants move to dismiss on several grounds: the claims are barred by the statute of limitations; there is no basis to infer that they were acting under color of state law; there is no basis to infer that plaintiff was the victim of invidious discrimination within the scope of § 1985; a Certificate of Merit has not been submitted, thereby precluding any attempt to proceed on a state-law claim for professional malpractice; and the court lacks jurisdiction to review the underlying state court orders/judgments. The county/court defendant(s) move to dismiss on the grounds that all claims against it are barred by the Eleventh Amendment, the Beaver County Civil and Criminal Court Divisions are not a "person" within the meaning of § 1983, the court lacks jurisdiction over the claims raised, and the complaint is untimely.

In response plaintiff asserts that he appealed the final order of Judge Knaflec on June 1, 2010, and the Superior Court did not take its final action on the appeal until April 12, 2011, when it denied an application to reinstate plaintiff's pending appeal, which closed the case in that

court. The filing of his motion to proceed in forma pauperis on June 12, 2012, was well within the statute of limitations. Further, § 1983 permits liability against a private party who jointly participates with a state or local official in the violation of another's constitutional rights; such individuals can be found to have acted under color of law. The attorney defendants and the judges of Beaver County engaged in interaction and collaboration that was "intertwined" with the actions of the court and thus the color of law element of a § 1983 and § 1985 claim is satisfied. Also, the attorney defendants made agreements based on predetermined outcomes of the proceedings and engaged in inappropriate interaction with the judges of the court, all of which was designed to deceive, mislead and defraud plaintiff of his legal rights. Because the decisions in the state court were the product of such collusion, the state court orders were rendered in violation of plaintiff's rights to due process and therefore this court has jurisdiction to entertain the relief requested. Because the case is fundamentally a civil rights case and not a professional malpractice case, no requirement for a Certificate of Merit exists and plaintiff has attached his own statement indicating no expert testimony is needed to prosecute the complaint, thus satisfying any such requirement in any event. The County Court defendant was responsible for numerous violations of plaintiff's rights to due process and equal protection. As a result, "the Supremacy Clause overrides any state doctrine and, as such, neither the County nor the State, enjoy 11th Amendment immunity from illegally violating the U.S. Constitution and/or Federal Law [and] [t] deprivation of Plaintiff's constitutionally-protected right to Due Process, by the state and in symphony with private 'actor', takes precedence and gives this court jurisdiction." Plaintiff's Brief in Response (Doc. No. 30) at 5.

   Plaintiff's claims against all defendants are untimely under the statute of limitations. Under the Federal Rules of Civil Procedure, a statute of limitations defense must be raised in the

answer because Rule 12(b)(6) does not authorize the defense to be raised by motion. <u>Robinson v. Johnson</u>, 313 F.3d 128, 134–35 (3d Cir. 2002), <u>cert.</u> <u>denied</u>, 540 U.S. 826 (2003). Nevertheless, "the law of this circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." <u>Id.</u> at 135. "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." <u>Id.</u>

"Actions brought under 42 U.S.C. §1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued." <u>Larsen v. State Employees' Ret. Sys.</u>, 553 F. Supp.2d 403, 415 (M.D. Pa. 2008) (quoting <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 126 (3d Cir. 2006)). Pennsylvania law provides a two-year statute of limitations. 42 Pa. C. S. § 5524.

The accrual date of a §1983 claim is governed by federal common-law tort principles. <u>Larsen</u>, 553 F. Supp.2d at 416. Under this approach "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." <u>Id.</u> (quoting <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007)). Therefore, the "cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." <u>Id.</u> (quoting <u>Sameric Corp. of Del. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998)). Claims predicated on the misuse of legal process typically accrue when the plaintiff is subject to the process because at that point in time he or she knows or should know of the injury. <u>See</u> <u>e.g.</u> <u>Rose v. Bartle</u>, 871 F.2d 331, 350-51 (3d Cir. 1989) (malicious abuse of process claim accrues when the plaintiff is arrested because he or she knows or should know of the improper use of process at that point in time).

Plaintiff argues that his § 1983 and § 1985 causes of action did not accrue when he became aware of the agreements between Attorney Douglas and Attorney Mitko in July of 2009, see Complaint (Doc. No. 3) at ¶ 26, or on June 1, 2010, when Judge Knafelc entered the opinion, order and decree of divorce following the April 29, 2010, all claims trial because the Superior Court had the ability to act on plaintiff's appeal challenging all of the trial-court conduct until April 12, 2011. Thus, he asserts he had until April 12, 2013, to commence this action and his filing of a motion to proceed in forma pauperis on June 12, 2012, was timely.

Plaintiff admits that he knew about the asserted conspiracy between Douglas and Mitko prior to July 23, 2009, when he filed his motion for a new hearing based on new evidence. Complaint (Doc. No. 3) at ¶ 24. He also admits that he experienced the effects of this agreement as his case unfolded and received the trial court's June 1, 2010, Opinion, Order and Decree that was "clearly predicated on this PFA and adjudicated by an unapologetically bigoted court that made not even a pretense of respect for the law or [plaintiff's] civil rights to due process and equal protection." Id. at p. 17-18 (Request for Relief).

Plaintiff's cause of action accrued against all defendants no later than June 1, 2010. At that point he knew of the injuries upon which his claims are grounded. There was no impediment to his filing suit on the claims raised in this court at that juncture. Plaintiff's decision to pursue an appeal did not change his knowledge of the underlying facts leading to his claimed injury. Thus, plaintiff had two years from June 1, 2010, to commence his action.

Moreover, the record fails to contain any facts or circumstances that would warrant equitable tolling under traditional grounds. The federal doctrine of "equitable tolling stops [a] statute of limitations from running when the date on which the claim accrued has already passed." Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000) (citing Oshiver v. Levin, Fishbein,

Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)). "Although the Supreme Court has repeatedly recognized the equitable tolling doctrine, it also has cautioned that" it should be sparingly utilized. Seitzinger v. Reading Hospital & Medical Center, 165 F.3d 236, 240 (3d Cir. 1999); United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998).

Equitable tolling generally is appropriate in three scenarios: (1) where a defendant has actively mislead the plaintiff with respect to his or her cause of action; (2) where the plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) where the plaintiff has asserted his or her claim in a timely manner but in the wrong forum. Lake, 232 F.3d at 370 n. 9. Extraordinary circumstances will be recognized where the plaintiff "could not by the exercise of reasonable diligence have discovered essential information bearing on his [or her] claim." Moody v. Kearney, 380 F. Supp.2d 393, 398 (D. Del. 2005) (quoting Kada v. Baxter Health Care Corp., 920 F.2d 446, 452 (7th Cir. 1990)).

Plaintiff cannot assert that defendants mislead him with respect to his cause of action. He knew of both the conduct and the purported results when Attorney Douglas turned over the file prior to July 23, 2009, and he knew of the opinion and rulings when they were issued on the public record on June 1, 2010.

The record fails to contain any extraordinary circumstances that would have prevented plaintiff from asserting his claims. The ability to commence this action through the filing on a motion to proceed in forma pauperis was available to plaintiff no later than June 2, 2010.

Finally, plaintiff did not assert a § 1983 claim in his state court proceedings. Plaintiff appealed the conduct and rulings in the state court proceedings. He was free even at that juncture to assert his civil rights claims in the state court or this court. He did not commence any such claim(s) in the state court and he did not commence this action until June 12, 2012. Thus,

plaintiff's claims for violation of his Fourteenth Amendment rights to due process and equal protection are untimely and barred by the statute of limitations.[1]

The record also demonstrates that the claims against defendants must be dismissed on other grounds as well. These include the lack of action taken under color of state law by Attorneys Douglas and Mitko and plaintiff's inability to overcome the County defendant(s)' invocation of immunity.

A § 1983 claim provides a vehicle for vindicating a violation of federal rights. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under §1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution or laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997); Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.") (citing Groman, 47 F.3d at 633)).

In order to establish that a defendant violated a constitutional right, "the exact contours of the underlying right said to have been violated" must be determined. Berg, 219 F.3d at 268 (citing City of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)). While plaintiff generally asserts that he was denied his rights to due process and equal protection and deprived of his right to receive fair and impartial treatment in the Court of Common Pleas of Beaver County, and he does set forth facts that identify the general progression of the state court proceedings, when the complaint is stripped of its hyperbole and generalized conclusions, it fails to set forth any further factual detail from which to determine whether plaintiff's rights plausibly were violated.

---

[1] This same analysis applies with equal force to plaintiff's state law claims.

Nevertheless, the court will afford plaintiff the most favorable reading possible in light of his pro se status and proceed with the issues raised in defendants' motions.

Plaintiff asserts claims against the civil and criminal divisions of the Beaver Court of Common Pleas contending that it conspired with all other defendants in adjudicating the PFA proceeding against plaintiff and the subsequent divorce proceeding that followed. The judges in these proceedings repeatedly made adverse rulings against plaintiff that were contrary to what the merits dictated, permitted opposing counsel more latitude in making arguments to the bench and did not adjudicate submissions by plaintiff in a timely manner. Opposing counsel was invited to make improper motions which were granted. Hearings requested by plaintiff were not timely convened. Plaintiff was confronted with belligerence, hostility and injustice. His motions were routinely ignored or denied. He suffered wrongful conviction, eviction, loss of personal property and significant mental anguish, physical and psychological distress, humiliation, shame and suffering.

The Beaver County Civil and Criminal Court Divisions invokes the immunity afforded by the Eleventh Amendment. Although immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); see also 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 358–59 (1990) (citing cases). Accordingly, absolute or qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (quoting Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996) (citation omitted)); accord Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998) (recognizing entitlement to official immunity on face of complaint); Santamorena v. Georgia

<u>Military College</u>, 147 F.3d 1337, 1342 (11th Cir. 1998) (recognizing entitlement to qualified immunity on face of complaint).

Suits against the state are barred by the Eleventh Amendment.[2] <u>Alabama v. Pugh</u>, 438 U.S. 781, 781-82 (1978). Eleventh Amendment immunity applies to suits against the state regardless of the relief sought. <u>In re Kish</u>, 212 B.R. 808, 814 (Bkrtcy D. N.J. 1997) ("the 'jurisdictional bar [of the Eleventh Amendment] applies regardless of the relief sought'") (citing <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 100–01 (1984)); <u>see also</u> <u>Cory v. White</u>, 457 U.S. 85, 90, (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the state itself simply because no money judgment is sought.").

Suits against a state agency or a state department are considered to be suits against a state which are barred by the Eleventh Amendment. <u>In re Kish</u>, 221 B.R. 118, 124-25 (Bkrtcy. D. N.J. 1998) (quoting <u>Geis v. Board of Educ. of Parsippany–Troy Hills, Morris Cnty.</u>, 774 F.2d 575, 580 (3d Cir. 1985)); <u>accord</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991); <u>Haybarger v. Lawrence County Adult Probation And Parole</u>, 551 F.3d 193, 198 (3d Cir. 2008) ("the Eleventh Amendment applies to suits against subunits of the State") (citing <u>Pennhurst</u>, 465 U.S. at 100). And suits against state officials for acts taken in their official capacity must be treated as suits against the state. <u>Hafer</u>, 502 U.S. at 25.

"The Commonwealth [of Pennsylvania] vests judicial power in a unified judicial system, and all courts and agencies of [that system] are part of the Commonwealth government rather than local entities." <u>Haybarger</u>, 551 F.3d at 198 (citing <u>Benn v. First Judicial Dist. of Pa.</u>, 426

---

[2] The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 267 (1997).

F.3d 233, 240-41 (3d Cir. 2005) and Pa. Const. art. V, § 1)).  It is likewise settled that

"Pennsylvania's judicial districts ... are entitled to Eleventh Amendment immunity."  Id.

     The civil and criminal court divisions are subunits of the Beaver County Court of

Common Pleas, and thus are a subunit of the Commonwealth's unified judicial system.  See 42

Pa.C.S.A.§ 961 ("Each court of common pleas shall have a domestic relations section . . .");

accord  Chilcott v. Erie County Domestic Relations, 283 Fed. Appx. 8, 10 (3d Cir. 2008)

("Furthermore, the District Court properly dismissed the suit against the Erie County Prison and

the Erie County Domestic Relations Section of the Erie County Court of Common Pleas because

the Eleventh Amendment of the United States Constitution protects an unconsenting state or

state agency from a suit brought in federal court by one of its own citizens.").

     The civil and criminal divisions are subunits of the Beaver County Court of Common

Pleas.  The Beaver County Court of Common Pleas is a state entity.  Immunity attaches to the

actions of the Beaver County Court of Common Pleas pursuant to the Eleventh Amendment.

Accordingly, plaintiff's claims against this entity must be dismissed.

     It is undisputed that Judges Kwidis and Knafelc were acting under color of state law.

Nevertheless, any purported claim of conspiracy sought to be advanced against Judges Kwidis

and Knafelc would be barred by judicial immunity.

     Immunity from suit applies to judicial officers in the performance of their official duties,

thereby relieving them from liability for judicial acts.  Azubuko v. Royal, 443 F.3d 302, 303 (3d

Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9 (1991)).  Furthermore, a "judge will not be

deprived of immunity because the action he took was in error, was done maliciously, or was in

excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear

absence of all jurisdiction.'" Azubuko, 443 F.3d at 303 (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).

Plaintiff's claims against defendants arise from the actions of Judges Kwidis and Knafelc in PFA and divorce proceedings. Plaintiff's complaints are all grounded in rulings made in the Court of Common Pleas of Beaver County. Judges Kwidis and Knafelc allegedly permitted the conspiracy between Attorney Mitko and Attorney Douglas to play out unabated to plaintiff's detriment and thereafter became members of the conspiracy by assisting Attorney Mitko at the expense of plaintiff's rights to due process and equal protection. As all of plaintiff's claim against Judges Kwidis and Knafelc are based on the performance of their judicial duties, they clearly are entitled to judicial immunity on any claims advanced against them. As a result, any such purported claims asserted by plaintiff must be dismissed.

Attorneys Douglas and Mitko dispute that they were acting under color of state law. Plaintiff claims that attorneys Douglas and Mitko formed a conspiracy to deprive plaintiff of the services he sought to obtain from Attorney Douglas and betrayed plaintiff while advancing the interests of plaintiff's ex-wife. The collusion precluded plaintiff from receiving fair and equitable hearings and resulted in the loss of his home, business, property, personal belongings, livelihood, and thousands of dollars. Judges Kwidis and Knafelc joined in the conspiracy and necessarily brought it to fruition by failing to act and then entering the rulings which resulted in these deprivations and concomitant harm.

It is well settled, however, that a plaintiff cannot establish the existence of conspiratorial conduct through the actions undertaken by counsel as part of an attorney-client relationship. Hefferan v. Hunter, 189 F.3d 405, 413 (3d Cir. 1999). Thus, as long as the attorney is acting in his or her official capacity and within the scope of representing the client, the attorney enjoys

immunity from suit under the Civil Rights Act.  Id.; accord N'Jai v. Floyd, 386 Fed. Appx. 141, 144 (3d Cir. 2010) (school districts' attorneys who acted in representative capacity in the plaintiff's civil rights and discrimination cases could not be found "liable under 42 U.S.C. §§ 1983, 1985, or 1986.").  Liability may attach in such settings only where the attorney acts solely in a personal capacity and not within the scope of the attorney-client agency.  Hefferan, 189 F.3d at 412 (citing in support Fraidin v. Weitzman, 611 A.2d 1046, 1077-80 (Md. App. 1992) (no conspiracy when attorneys act within scope of employment unless they act for their "sole personal benefit")).  The courts consistently have been followed these principles in this jurisdiction.  See e.g. Singleton v. Pittsburgh Bd. of Educ., 2012 WL 4063174, * 6-8 & n. 8 (W.D. Pa. August 24, 2012) (Lenihan, Magistrate Judge) (allegations that indicate among other things that an attorney was acting for the benefit of his or her clients and not solely for his or her personal benefit cannot provide the relationship necessary to confer state actor status on the attorney under § 1983) (collecting cases).

    Moreover, immunity from § 1983 conspiratorial liability remains even where an attorney acts for "mixed motives" so long as at least one basis for the challenged conduct is within the scope of the agency.  Hefferan, 189 F.3d at 413.  In other words, the mere fact that the challenged conduct may benefit the attorney does not make it actionable provided it is undertaken within the scope of representation.  Id.  And this is so even where the conduct violates the canons of ethics.  Id.  ("The challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge" under the Civil Rights Act.).

    Plaintiff has failed to advance any factual basis to make it plausible that either Attorney Douglas or Attorney Mitko acted solely for their own personal benefit.  Even though there is

19

alleged to be a biased relationship between Attorney Mitko and Judges Kwidis and Knafelc, the representing attorneys cannot be deemed to have acted outside the scope of representation solely based on that relationship.  The actual facts alleged create only the inference that the attorneys carried out their duties to represent their clients within the scope of the attorney-client agency and Attorney Mitko eventually received two decisions in favor of her client.   Additionally, if the attorneys did personally benefit from a favorable ruling or order, the facts nevertheless indicate that they were acting in their official capacity in representing their clients.  Thus, there is no basis to support a showing of conspiratorial conduct and plaintiff's claims against attorneys Douglas and Mitko must be dismissed.

Plaintiff's claims pursuant to § 1985(3) are misplaced.  Section 1985 provides a cause of action for conspiracies with the objective of: 1) preventing by force, intimidation or threat any person from accepting or holding office or performing the duties thereof, 2) deterring by force, intimidation or threat any party or witness from giving testimony in any court of the United States and 3) depriving any person or class of persons of the equal protection of the laws.  42 U.S.C. §1985(1)-(3).  Plaintiff has not pled any facts that would implicate subsections one or two.  Thus, the issue is whether plaintiff's case fits within §1985(3).

In order to state a claim under §1985(3), a plaintiff must allege "1) a conspiracy, 2) motivated by a racial and class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws, 3) an act in furtherance of the conspiracy and 4) an injury to the person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).  This right to redress is not intended to provide a federal remedy "for all tortious, conspirator interferences with the rights of others" or to be a "general [font of] federal tort law."

Faber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (citing Griffin v. Breckenridge, 403 U.S. 88, 101-102 (1971)). To the contrary, this section can be invoked only where the conspiracy has as its purpose the deprivation of the equal protection of the laws or privileges and immunities under the law, and this deprivation is motivated by racial or class-based animus. Griffin, 403 U.S. at 102; United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 829 (1983).

The facts in plaintiff's complaint do not give rise to a reasonable inference that any concerted action was motivated by invidious discriminatory animus. Under the well-pleaded facts it is plausible that defendants made agreements about how to proceed in the PFA and divorce proceedings. It is not plausible, however, that any action or inaction by defendants was motivated by race or class-based animus. Because the allegations of the complaint do not give rise to a reasonable inference that any highlighted actions were motivated by racial or class-based invidious discriminatory intent, plaintiff's §1985(3) conspiracy claim cannot stand.

Any claim that plaintiff has sought to set forth for malfeasance or nonfeasance in the performance of professional duties likewise cannot proceed. Where the defendant is a licensed professional, a plaintiff must file a certificate of merit by an appropriate licensed professional indicating that a reasonable probability exists that the licensed professional deviated from the applicable standard of care before the action can proceed. Velazquez v. UPMC Bedford Memorial Hosp., 328 F. Supp.2d 549, 559-60 (W.D. Pa. 2004). The failure to do so within 60 days of the filing of the claim subjects it to dismissal upon request of the defendant. Id. at 560. The plaintiff cannot overcome this shortcoming where the statute of limitations has run. Id. at 561.

Here, plaintiff has failed to comply with the requirement that a certificate of merit be filed. Attorney Douglas moves for dismissal on this ground. Plaintiff's subjective assessment that one is not needed falls woefully short of the mark. This failure cannot be cured at this juncture because the statute of limitations has run before the claim was perfected. Accordingly, plaintiff's state law claims for nonfeasance and/or malfeasance against Attorney Douglas are subject to dismissal.

Plaintiff's state law claims against Attorney Mitko likewise are deficient as a matter of law. A plaintiff must be able to establish an attorney-client relationship with the licensed professional before a suit can be brought based on the attorney's professional services. Guy v. Liederbach, 459 A.2d 744, 750 (Pa. 1983). Here, plaintiff's allegations demonstrate clearly that Attorney Mitko did not owe any duty to plaintiff. Thus, any state law claim predicated on an injury from Attorney Mitko's professional conduct is without foundation and must be dismissed.

For the reasons set forth above, all claims in plaintiff's complaint must be dismissed. An appropriate order granting defendants' motions to dismiss and dismissing the complaint will follow.

Date: March 13, 2014

s/David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:    Douglas E. Retter
      178 Sunset Drive
      Beaver Falls, PA 15010
      (*Via First Class Mail*)

      Bethann R. Lloyd, Esquire
      David B. White, Esquire
      Laura E. Benson, Esquire
      Caroline Liebenguth, Esquire
      *(Via CM/ECF Electronic Mail)*